IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ARLINGTON COMMUNITY FEDERAL CREDIT UNION )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Case No. 1:14cv1022<br>BERKLEY REGIONAL INSURANCE )<br>COMPANY )<br>)<br>Defendant. ) | |

## MEMORANDUM OPINION

In this removed diversity insurance coverage dispute, the threshold issue is the propriety of the removal on diversity jurisdiction grounds. Specifically, two questions are raised:

> (1) whether plaintiff, a federally chartered corporation, which is not covered by 28 U.S.C. § 1332, is "localized" in Virginia and thus a Virginia citizen for diversity of citizenship purposes where, as here, plaintiff has its principal place of business in Virginia, all of its branch offices are in Virginia, and the vast majority of its business operations are in Virginia; and, if so,

> (2) whether a removal notice adequately states jurisdictional grounds for removal where, as here, defendant's removal notice cites as the grounds for removal (i) diversity of citizenship and (ii) plaintiff's principal place of business in Virginia, but does not specify that plaintiff is localized in Virginia, or allege facts relating to the application of the localization doctrine.

For the reasons stated from the bench and elucidated here, diversity jurisdiction is present in this case, the notice of removal is adequate, and, in any event, defendant, in these circumstances, may properly be permitted to amend its notice of removal to add factual allegations in support of diversity jurisdiction as its basis or ground for removal.

1

## I.

Plaintiff Arlington Community Federal Credit Union ("ACFCU") is a federal credit union engaged, *inter alia*, in the business of offering its members various financial services, including savings accounts and mortgage loans. It is undisputed that ACFCU's principal place of business is in Arlington, Virginia and that all of ACFCU's branch offices are in Virginia. Also undisputed is that approximately 78 % of ACFCU's members list Virginia as their state of residence, and that Virginia members account for 86 % of ACFCU's total deposit account balance and 79 % of ACFCU's total loan balance.

Defendant Berkley Regional Insurance Company ("Berkley") is a Delaware corporation engaged in the business of insurance. Berkley issued an insurance policy to ACFCU, titled Financial Institution Bond for Credit Unions, Bond No. CUB 6002662-11 (hereinafter the "Policy").

The Policy, by its terms, provides coverage for various losses and also excludes coverage in certain circumstances. Specifically pertinent here is the policy provision which provides coverage for:

> (O)(1) Loss resulting directly from fraudulent instruction through E-mail, Telefacsmile or Telephonic means received by the Insured from a person who purports to be the Accountholder, the Accountholder's authorized representative or an employee but is not the Accountholder, [or] the Accountholder's authorized representative or an Employee, provided:
>
> (a) the Insured performed a Callback Verification with respect to the instruction, or
> (b) the Insured followed a commercially reasonable security procedure set forth in a written funds transfer agreement, signed by the Accountholder or the Accountholder's authorized representative, that governs the transaction and instruction.

Also pertinent here is exclusion q, which excludes coverage for:

2

> (q) loss resulting directly or indirectly from a fraudulent instruction through E-mail, Telefacsimile, or Telephonic means, or ACH debit from the Accountholder's account that was originated through another financial institution, except as may be covered under the Employee or Director Dishonesty Insuring Agreement, or the Funds Transfer Insuring Agreement.

On September 25, 2013, ACFCU received a wire transfer request from a person claiming to be an ACFCU member. In these circumstances, ACFCU procedures require that the responding employee verify the request by calling the requesting party back to verify pertinent security information. Consistent with these procedures, the ACFCU employee on duty called the requestor twice at home to verify pertinent security information. In doing so, the ACFCU employee apparently confirmed the source and validity of the wire transfer before wiring the funds in accordance with the request. The amount of the wire transfer was $198,760. In fact, the request was fraudulent, and ACFCU made a claim under the Policy for this loss. Berkley acknowledged coverage for this loss under the Policy chiefly because ACFCU had performed the required callback verification in accordance with both the terms of the Policy, as well as ACFCU's internal security procedures.

On September 27, two days later, ACFCU received a telephone call from a person purporting to be the same ACFCU member who submitted the wire transfer request two days earlier. In this call, this individual made a second wire transfer request. This time, ACFCU's representative did not, as required by ACFCU procedures and the Policy, call the requestor back to verify pertinent security information. Instead, ACFCU's representative chose to verify, in the same telephone call, the alleged member's date of birth, phone number, and email address, as well as the maiden name of the alleged member's mother, along with the amount and destination of the wire transfer. On the basis of having verified this information, the ACFCU representative complied with the request and wired the funds—$153,893. This request was also fraudulent.

3

With respect to this transaction, Berkley denied coverage for ACFCU's loss because ACFCU did not perform a callback verification as required by the Policy, and because ACFCU contravened its own internal wire transfer guidelines by failing to complete a callback verification. In response, ACFCU argues that although a callback verification did not occur on September 27, the ACFCU representative nonetheless performed a "commercially reasonable security procedure" consistent with the terms of the Policy (¶ O(1)(b)) and hence, the Policy requires Berkley to reimburse ACFCU for the $153,893 lost as a result of the fraudulent September 27 transaction. Thus, it is this second transaction which forms the basis for the parties' instant dispute.

Because Berkley denied coverage for the loss stemming from the September 27 transaction, ACFCU filed a lawsuit in the Circuit Court for the County of Arlington, (i) alleging that Berkley breached the terms of the Policy by denying coverage and (ii) seeking a declaration that Berkley must provide coverage for the September 27 loss. Berkley then removed the case, alleging diversity of citizenship, while noting that ACFCU's principal place of business is in Virginia, and further alleging that the amount in controversy requirement was met. ACFCU now seeks a remand of the case, arguing (i) that federal subject matter jurisdiction does not exist and (ii) that Berkley's notice of removal is defective in failing to include adequate allegations in support of removal, and the 30-day window for amending the notice of removal has elapsed. *See* 28 U.S.C. § 1446(b). Berkley opposes ACFCU's motion to remand on both grounds, and also filed a motion to dismiss ACFCU's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1] Following oral argument, Berkley's motion to dismiss was granted without prejudice and ACFCU was granted leave to amend its complaint. *See Arlington Cmty. Fed. Credit*

4

## II.

The focus of the parties' jurisdictional dispute is the citizenship of ACFCU, a federally chartered corporation. If, for diversity purposes, ACFCU is a citizen of Virginia, as Berkley claims, diversity jurisdiction exists, given that Berkley is a Delaware corporation. On the other hand, if, as ACFCU claims, ACFCU is not a citizen of any state, then diversity jurisdiction does not exist and the absence of subject matter jurisdiction would require a remand.

The history of the citizenship of federally chartered corporations is both interesting and worth briefly recounting here. Neither Congress nor the Supreme Court has specifically addressed the question of the citizenship of a federally chartered corporation for diversity jurisdiction purposes. In 1958, when Congress amended 28 U.S.C. § 1332(c) to expand corporate citizenship to include a corporation's principal place of business, the statute remained silent as to the citizenship of federally chartered corporations.[2] Accordingly, some courts at that time and prior to that time treated federally chartered corporations as citizens of no state.[3] In 1956, an Oregon district court in *Elwert v. Pacific First Fed. Sav. & Loan Ass'n*, 138 F. Supp. 395 (D. Or. 1956) judicially created what is now generally known as the "localization doctrine,"

---

*Union v. Berkley Reg'l Ins. Co.*, No. 1:14cv1022 (E.D. Va. Oct. 10, 2014) (Doc. 26) (Order).

[2] *See Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*, 415 F. Supp. 2d 636, 639 (E.D. Va. 2006) ("[W]hen Congress amended the definition of corporate citizenship to include a corporation's principal place of business, it did not state specifically whether this definition applied to federally chartered corporations as well as to those incorporated under state laws."); *see also Burton v. U.S. Olympic Comm.*, 574 F. Supp. 517, 519 (C.D. Cal. 1983) ("[T]here is no evidence that Congress ever considered the applicability of the 1958 amendment [of 28 U.S.C. § 1332] to federal corporations. Rather, Congress probably intended the 1958 amendment to affect the jurisdictional status of state-incorporated companies only, leaving the status of federal corporations to receive further elaboration by the federal courts.").

[3] *See Lehman Bros.*, 415 F. Supp. 2d at 639 ("[L]ower courts have uniformly construed § 1332(c) to apply *only* to companies incorporated under state law . . . .") (emphasis added). *See also Hancock Fin. Corp. v. Fed. Sav. and Loan Ins. Corp.*, 492 F.2d 1325, 1329 (9th Cir. 1974) (federal corporation had "citizenship in no particular state for diversity purposes").

5

extending diversity jurisdiction to federally chartered corporations by deeming such corporations citizens of states where their business was localized. *Id.* at 402. Although never addressed by the Supreme Court or Congress, this judicially created localization doctrine has since won general acceptance in various federal courts. Three years after the *Elwert* decision, the Third Circuit became the first Court of Appeals to endorse the localization doctrine in *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453 (3d Cir. 1959). The Third Circuit justified the application of the localization doctrine to federal corporations on three separate grounds. First, the Third Circuit noted that in situations where a federal corporation's membership and activities were concentrated in a single state, it made practical sense to deem that corporation a citizen of that state. *Id.* at 455. Second, the Third Circuit reasoned that if diversity jurisdiction existed for the purpose of guarding against local bias, such bias was "more likely to be present in the case of a corporation thus localized in fact than one which is connected with the state only in the formal sense of having been incorporated there." *Id.* Finally, the Third Circuit found Congress's 1958 amendment of 28 U.S.C. § 1332 probative of the "present direction of public policy . . . toward greater recognition of local corporate activity as equivalent to citizenship for diversity purpose[s]," because Congress deemed state corporations citizens of both their states of incorporation and their principal places of business. *Id.* at 456.[4] In the wake of *Lake Hiawatha*, a number of federal appellate courts—but not yet the Fourth Circuit—have also adopted the localization doctrine.[5]

---

[4] These reasons led the Third Circuit to conclude both that the localization doctrine was a valid application of diversity jurisdiction, and that the defendant, Lake Hiawatha Federal Credit Union, was localized in New Jersey. *Lake Hiawatha*, 272 F.2d at 456. The Third Circuit also noted that Congress's 1958 amendment of 28 U.S.C. § 1332 was evidence that "localizations less extreme than we have in this case will suffice to establish corporate citizenship in the administration of diversity jurisdiction." *Id.*

In 1995, the Eleventh Circuit clarified the contours of the localization doctrine in *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603 (11th Cir. 1995). Up to this point, some district courts had interpreted the localization doctrine as applicable only to federally chartered corporations that conducted their activities entirely within a single state.[6] The Eleventh Circuit, however, rejected the argument that localization could be found only when a "corporation's activities are exclusive to one state," concluding instead that:

> [s]uch an evaluation should involve a more expansive inquiry into the corporation's business. A variety of factors are relevant to this inquiry, such as the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature.

*Id.* at 606. The *Loyola* decision transformed the localization inquiry from a binary test—whether a corporation's activities are only confined within one state—to a more nuanced and comprehensive analysis of the corporation's presence and activities in various states. The Eleventh Circuit justified its "more expansive approach" on the ground that it "comport[ed] with diversity jurisdiction's purpose of avoiding any possible bias favoring the party from the state in

---

[5] *See, e.g., Equilease Corp. v. State Fed. Sav. and Loan Ass'n*, 647 F.2d 1069, 1070 (10th Cir. 1981) (finding without discussion that "[f]ederal jurisdiction vests by virtue of diversity of citizenship"); *First Southern Fed. Sav. & Loan Ass'n of Mobile, Ala. v. First Southern Sav. and Loan Ass'n of Jackson County, Miss.*, 614 F.2d 71, 72-73 (5th Cir. 1980) (same); *Cmty. Fed. Sav. and Loan Ass'n of Overland v. General Cas. Co. of America*, 274 F.2d 620, 621 (8th Cir. 1960) (same).

[6] *See Little League Baseball, Inc. v. Welsh Pub. Group, Inc.*, 874 F. Supp. 648, 652-54 (E.D. Pa. 1995) (noting that even though corporation's principal place of business was in Pennsylvania, corporation's daily operations were in Pennsylvania, and corporation owned land, buildings, and facilities in Pennsylvania, the corporation was not localized because its charter authorized the corporation to take action outside Pennsylvania and "plaintiff's activities extend well beyond the territory of the Commonwealth"); *Burton*, 574 F. Supp. at 521-22 (finding that even though United States Olympic Committee ("USOC") had its principal place of business in Colorado, owned substantial real estate holdings in Colorado, owned no facilities or other property outside Colorado, and only paid taxes in Colorado, the USOC was not localized because it was "authorized to do business . . . nationwide").

which the state court proceeding is brought." *Id.* The four-factor *Loyola* test is now the prevailing test used by district courts in this circuit and elsewhere in the localization inquiry.[7] It is clear that in applying the *Loyola* four-factor test, no one factor is determinative and there is no clear dividing line separating geographically diverse companies from localized ones. *Lehman Bros.*, 415 F. Supp. 2d at 640. Thus, the question presented here is whether application of the localization doctrine, as elucidated in *Loyola*, demonstrates that ACFCU is localized in Virginia. Here, the pertinent evidence points conclusively to the conclusion that ACFCU is localized in Virginia.

To begin with, it is undisputed that ACFCU's principal place of business, the first factor in the *Loyola* localization analysis, is in Arlington, Virginia. Next, all of ACFCU's branches are in Virginia, which satisfies the second *Loyola* factor. Relatedly, the vast majority of ACFCU's ATMs are in Virginia, a fact which further supports ACFCU's localization in Virginia. The third factor in the *Loyola* localization analysis is the scope of ACFCU's business transactions. It is uncontroverted that approximately 78 % of ACFCU's members list Virginia as their state of residence, and that up to 86 % of ACFCU's total deposit account balance is attributable to Virginia members, along with 79 % of ACFCU's total loan balance. These figures demonstrate that the vast majority of ACFCU's business occurs in Virginia. And while ACFCU may conduct

---

[7] *See, e.g., TCT Fed. Credit Union v. Cumis Ins. Soc., Inc.*, No. 1:10-cv-150, 2011 WL 817496 at *6 (N.D.N.Y. March 2, 2011) ("[A]lthough [p]laintiff may conduct a small portion of its business outside New York State, the overwhelming amount of its business, as well as the overwhelming number of its members, is located in New York. Therefore, the Court finds that [d]efendant . . . has met its burden to show that the localization [doctrine] applies to [p]laintiff . . . ."); *Lehman Bros.*, 415 F. Supp. 2d at 640; *Iceland Seafood v. Nat'l Consumer Co-op. Bank*, 285 F. Supp. 2d 719, 725-26 (E.D. Va. 2003); *Sovereign Bank v. Chicago Title Ins. Co.*, No. Civ. A. 00-596, 2000 WL 1100800 at *2-*3 (E.D. Pa. Aug. 7, 2000). It is worth noting that both *Little League* and *Burton* pre-date *Loyola*, and the outcomes in both of those cases might have been different if those decisions had applied the *Loyola* factors.

a small portion of its business in other states, the localization doctrine "is not limited to corporations that conduct all of their activities in one state." *Lehman Bros.*, 415 F. Supp. 2d at 640. The final factor in the analysis is any other evidence probative on the question of localization. Berkley points to ACFCU's website, which states that it serves "all those who live, work, worship, go to school, volunteer, or consistently do business in *Arlington County*."[8] Although ACFCU changed its name in 2005 from Arlington Virginia Federal Credit Union to Arlington Federal Credit Union, ACFCU's website makes clear that its primary goal is to serve customers in Virginia.

Apart from the *Loyola* test, the policy considerations underlying the localization doctrine also favor a finding of localization in this case. Since ACFCU's operations, member base, branches, and principal place of business are all in Virginia, it might be said that ACFCU would receive favorable treatment from a Virginia state court (so-called "home cooking") if this case were remanded. Therefore, this is a case where ACFCU is a "local institution" and it is appropriate to find that it is a citizen of Virginia, thus allowing Berkley the choice of removing the case to federal court to prevent any potential benefit ACFCU might receive from a Virginia state court. *See Lake Hiawatha*, 272 F.2d at 454-55 (noting that a federal credit union was a "peculiarly local institution of a single community in the state of New Jersey").

In sum, the "overwhelming" amount of both ACFCU's members and business are in Virginia, and application of the *Loyola* factors along with the underlying rationale for diversity jurisdiction points convincingly to the conclusion that ACFCU is localized in Virginia. *See TCT*, 2011 WL 817496 at *6 ("[T]he overwhelming amount of [plaintiff's] business, as well as the overwhelming number of its members, is located in New York."). It follows that because its

---

[8] *See* https://www.arlingtoncu.org/about-us/ (emphasis added).

business is localized in Virginia, ACFCU is a Virginia citizen and hence, diversity jurisdiction exists.

### III.

This conclusion does not end the analysis, as ACFCU contends that even assuming ACFCU is localized in Virginia, Berkley's notice of removal did not allege localization as the basis for diversity jurisdiction and therefore, the notice is defective, requiring a remand. ACFCU further contends that it is too late for Berkley to amend its removal notice, as the 30-day removal period has expired. *See* 28 U.S.C. § 1446(b). ACFCU's contention raises two questions: first, whether Berkley's notice of removal sufficiently alleged the basis or ground for removal, and second, assuming Berkley's notice of removal is deficient, whether Berkley is permitted to amend its notice of removal despite the passage of the 30-day removal period.

The removal statute—28 U.S.C. § 1446—requires that a defendant file a notice of removal within 30 days after service of process "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Although a notice of removal is not a pleading as defined by Federal Rule of Civil Procedure 7(a), "this language in § 1446(a) is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008). Thus, as the Fourth Circuit has stated:

> [J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that [the amount in controversy exceeds the jurisdictional minimum] so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner.

*Id.* at 200. It is undisputed that Berkley's notice of removal alleges both that "the parties are diverse" and that the "amount in controversy is $153,893.00, which exceeds the minimum

10

amount in controversy requirement."[9] Therefore, applying the standard in *Ellenburg* and, by extension, Rule 8, Fed R. Civ. P., Berkley's original notice of removal passes muster under § 1446(a), and thus requires no amendment.[10] Alternatively, however, assuming, *arguendo*, the insufficiency of Berkley's removal notice, there is no doubt that Berkley, in these circumstances, may amend its notice of removal because it does not seek to add a new basis or ground for subject matter jurisdiction, but simply seeks to elucidate, with further facts, an already stated removal basis or ground.

When a notice of removal does not meet the requirements of 28 U.S.C. § 1446(a), courts are faced with two choices: (i) to remand the case to state court based on a defendant's failure to allege subject matter jurisdiction, or (ii) to permit a defendant to amend the notice of removal. As a general rule, amendments to removal notices are proper when "there is a technical defect and there are averments sufficient to show jurisdiction." *Kinney v. Columbia Sav. & Loan Ass'n*, 191 U.S. 78, 83 (1903). In this regard, the Fourth Circuit has adopted the rule that "after thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal. Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis." *Wood v. Crane Co.*, 764 F.3d 316, 323 (4th Cir. 2014); *see also Iceland Seafood*, 285 F. Supp. 2d at 726.[11] In other words, defendants may amend their

---

[9] *Arlington Cmty. Fed. Credit Union v. Berkley Reg'l Ins. Co.*, No. 1:14cv1022 (E.D. Va. Aug. 8, 2014) (Doc. 1) at 2.

[10] *See also Dart Cherokee Basin Operating Co., LLC v. Owens*, 730 F.3d 1234, 1238 (10th Cir. 2013) (removing party "need only allege the jurisdictional amount in its notice of removal and must prove that amount only if the plaintiff challenges the allegation").

[11] Interestingly, commentators have also endorsed a variation on this approach to notices of removal: "the better rule is that detailed grounds for removal need not be set forth in the notice.

notices of removal when, for example, "jurisdiction is alleged in a conclusory fashion or where some allegations, such as principal place of business [are present], but not all other necessary specifics are [present]." *Richmond, F. & P. R. Co. v. Intermodal Servs. Inc.*, 508 F. Supp. 804, 805 (E.D. Va. 1981). On the other hand, to avoid unnecessary derogation of state sovereignty, "an allegation of jurisdiction entirely absent from the [n]otice of [r]emoval may not be supplied outside of the 30-day period." *Id.* Also, some courts note that an important consideration in allowing a defendant to amend its notice of removal is whether the plaintiff would be prejudiced by the amendment. *See, e.g., Richmond*, 508 F. Supp. at 805. Importantly, the Fourth Circuit has noted that ultimately, "jurisdiction ought to depend more upon the truth of defendant's allegation of diversity than upon the . . . choice of verbiage." *Nutter v. New Rents, Inc.*, 945 F.2d 398 (Table), 1991 WL 193490 at *2 (4th Cir. 1991).[12] Assuming Berkley's notice of removal is inadequate, the question presented is whether Berkley imperfectly proffered allegations supporting the claim of diversity jurisdiction as the basis or ground for removal, or whether Berkley, by amending the notice, is attempting to allege a new jurisdictional basis or ground for removal that was absent from the original removal notice.

The line between allegations of a jurisdictional ground or basis for removal which are "missing" from a notice of removal as opposed to allegations that are merely "imperfectly

---

Rather, it should be sufficient if the court is provided the facts from which its jurisdiction can be determined." C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3733 (1976).

[12] Some district courts in this circuit have contrasted a "strict constructionist" approach to amendments of notices of removal with a "liberal approach." The former allows amendment "only for the purpose of setting forth more specifically grounds that had been imperfectly stated in the original petition," and the latter permits amendment "where the imperfection in the jurisdictional allegation is a mere defect." *Wood*, 764 F.3d at 323. But the Fourth Circuit has held that "these two schools differ only in verbiage" and both approaches follow the same principle that defendants may amend their removal notices to expand upon existing grounds or bases for subject matter jurisdiction in their removal notices, but may not allege new bases or grounds for subject matter jurisdiction. *Id.*

stated" is not always entirely distinct. Federal courts, including courts in this district, have interpreted this principle as allowing defendants to amend their removal notices only when they are elaborating on an existing basis or ground for subject matter jurisdiction, but not where a defendant seeks to introduce a new ground or basis for subject matter jurisdiction.[13] In *Tincher v. Ins. Co. of State of Pa.*, 268 F. Supp. 2d 666 (E.D. Va. 2003), the court found that the defendant could not allege fraudulent joinder as a basis for subject matter jurisdiction both because this allegation was not present in the defendant's notice of removal and was "substantial and material." *Id.* at 667-68. Similarly, in *Iceland Seafood*, the defendant was not permitted to amend its notice of removal to allege jurisdiction based on 12 U.S.C. § 3012(6), instead of diversity jurisdiction, which was the only basis for subject matter jurisdiction in the defendant's notice of removal. *Iceland Seafood*, 285 F. Supp. 2d at 727. By contrast, in *Muhlenbeck v. KI, LLC*, 304 F. Supp. 2d 797 (E.D. Va. 2004), the court properly allowed the defendant to amend its notice of removal when the defendant alleged diversity jurisdiction but did not allege specifically the citizenship of plaintiff, an LLC, because the defendant did not "omit[] completely" a ground for removal, and thus, was not seeking a new basis for subject matter jurisdiction. *Id.* at 800-801.[14] In sum, amendments to a removal notice are permissible past the 30-day limit where they

---

[13] *See Wood*, 764 F.3d at 323 ("Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional *basis*.") (emphasis added); *USX Corp. v. Adriatic Ins. Co.*, 345 F.2d 190, 205 (3d Cir. 2003) (amendment was proper because defendant "did not rely on a basis of jurisdiction different from that originally alleged" and did not seek to create an "entirely new basis for jurisdiction"); *Whitmore v. Victus, Ltd.*, 212 F.3d 885, 890 (5th Cir. 2000) ("[A]llowing a party to amend its pleadings to inform the court of an existing basis for subject matter jurisdiction" was proper).

[14] *See also FHC Options, Inc. v. Security Life Ins. Co. of America*, 993 F. Supp. 378, 382 ("[Defendant's] assertion that it was a 'Norfolk corporation' is an imperfectly stated allegation of diversity, not a missing allegation of diversity. Therefore, the Court will . . . allow [defendant] to amend its [n]otice of [removal] . . . .").

elaborate on an existing basis or ground for subject matter jurisdiction already stated; by contrast, amendments to a removal notice are impermissible where they seek to inject a new basis or ground for subject matter jurisdiction.

It is undisputed that in this case, Berkley's notice of removal states, in relevant part:

> At the time the Complaint was filed and at the time of the removal, Arlington was and continues to be a community credit union organized under the Federal Credit Union Act, 12 U.S.C. §§ 1651-1795k, its principal place of business is in Virginia, and [it] is a citizen of Virginia. *See* Compl. ¶¶ 3-4. Therefore, the parties are diverse.[15]

ACFCU argues that Berkley's notice of removal is defective because it alleges only that ACFCU's principal place of business is in Virginia, a fact which is determinative of *state* corporation citizenship, but is, by itself, not dispositive as to whether a *federal* corporation is localized. *See Iceland Seafood*, 285 F. Supp. 2d at 723. ACFCU is correct that, as it currently stands, Berkley's notice of removal does not address whether ACFCU is localized in Virginia. Nonetheless, Berkley should be permitted to amend its notice of removal, as the removal notice states accurately, if perhaps imperfectly, that diversity jurisdiction is the basis or ground for removal. First, Berkley's amendment simply seeks to elucidate the reasons for the existence of diversity jurisdiction. Importantly, Berkley is not asserting a new basis or ground for subject matter jurisdiction in amending its removal notice. Second, while principal place of business is not the only consideration in the localization analysis, it is the first *Loyola* factor. *See Loyola*, 58 F.3d at 606. In other words, where, as here, Berkley's notice of removal contains some allegations to support diversity jurisdiction on the basis of localization, Berkley may amend its notice, even if the notice does not contain *all* of the necessary specifics to support ACFCU's localization in Virginia. *See Richmond*, 508 F. Supp. at 805.

---

[15] *Arlington Cmty. Fed. Credit Union v. Berkley Reg'l Ins. Co.*, No. 1:14cv1022 (E.D. Va. Aug. 8, 2014) (Doc. 1) at 2.

14

ACFCU, relying on *Tincher* and *Iceland Seafood*, argues that permitting Berkley to amend its notice of removal would allow Berkley to introduce a new subject matter jurisdiction ground or basis absent from its notice of removal. This argument is unpersuasive. Both *Tincher* and *Iceland Seafood* involved defendants seeking to raise a new basis or ground for subject matter jurisdiction well after the 30-day removal period.[16] By contrast, Berkley's argument to amend its notice of removal in this case simply seeks to explain the reasons for the existence of diversity jurisdiction already stated in Berkley's removal notice. As such, this case is strikingly similar to *Muhlenbeck*, where the defendant was permitted to amend its notice of removal in alleging the citizenship of a company. The amendment in *Muhlenbeck*, like the amendment allowed here, did not inject a new basis or ground for subject matter jurisdiction. *Muhlenbeck*, 304 F. Supp. 2d at 801.

Relevant considerations of fairness also favor allowing Berkley to amend its notice of removal. Berkley's amendment causes no prejudice or surprise to ACFCU. Moreover, this is a case where Berkley's allegation of diversity, while imperfectly stated, is correct. And the Fourth Circuit is clear that at the end of the day, the veracity of diversity allegations should trump the "choice of verbiage," used to make those allegations. *Nutter*, 1991 WL 193490 at *2. Therefore, based on the foregoing analysis, Berkley is properly afforded leave to amend its notice of removal.

---

[16] The fraudulent joinder doctrine is an "exception to the requirement of complete diversity" making the fraudulent joinder argument in *Tincher* a new basis for subject matter jurisdiction independent from normal diversity jurisdiction allegations based on 28 U.S.C. § 1332. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

## IV.

In sum, application of relevant jurisdictional principles leads to the conclusion that: (1) ACFCU is localized in Virginia such that diversity jurisdiction exists in this case; (2) Berkley's original notice of removal contained sufficient allegations to satisfy 28 U.S.C. § 1446, so amendment of its notice of removal is not necessary; and (3) even assuming Berkley's original notice of removal is defective, Berkley may amend its notice because the amendment seeks only to cure imperfectly stated allegations but does not seek to add a new basis or ground for subject matter jurisdiction.

An appropriate Order has issued.

Alexandria, VA
October 30, 2014

/s/
_____
T. S. Ellis, III
United States District Judge